Richard M. Pereles and Daphne L. Pereles v. Commissioner.
Pereles v. Commissioner
Docket No. 1364-68.
United States Tax Court
T.C. Memo 1969-174; 1969 Tax Ct. Memo LEXIS 123; 28 T.C.M. (CCH) 872; T.C.M. (RIA) 69174; August 25, 1969, Filed *123 Harold R. Williams, Tennessee Bldg., Houston, Tex., for the petitioners. W. Reed Smith, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1964 in the amount of $933.98. The issue for decision is the amount, if any, of capital gain realized by petitioners on the sale in September 1964 in Brazil of an automobile. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who were residents of Houston, Texas at the time of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1964 with the district director of internal revenue at Austin, Texas. Sometime in 1959 Richard M. Pereles (hereinafter referred to as petitioner) met and became friends with William H. Hopkins (hereinafter referred to as Hopkins) of Houston, Texas. At that time petitioner was operating an automobile agency in Connecticut and Hopkins was president of a corporation and interested in other businesses in Houston, Texas. In early 1961 petitioner came to Washington, D.C. and accepted *124 a position with the Small Business Administration. He later transferred from that position to a position with the Defense Department and later transferred to a position with the Agency for International Development. In July 1962 Hopkins purchased from a dealer in Damascus, Maryland a 1962 Ford station wagon and requested that petitioner pick the station wagon up for him from the dealer and keep it so that Hopkins could use it when he came to Washington. It was understood that in return for garaging the station wagon petitioner would be entitled to use it freely when Hopkins was not using it. The title to the station wagon was taken in the name of Tusco Corporation which was a corporation owned by Hopkins. The automobile was registered in the State of Texas and bore Texas license plates. At the time of the purchase of the automobile, Hopkins made frequent trips to Washington, D.C. Sometime about November 1962 Hopkins suffered a heart attack and ceased making regular trips to Washington. In February 1963 Hopkins directed petitioner to sell the 1962 Ford station wagon. The title to the Ford station wagon was transferred from Tusco Corporation to petitioner in February 1963 and petitioner *125 applied for a Maryland title to the automobile and obtained such a title. The automobile was registered in the State of Maryland and bore Maryland license plates. Petitioner in applying for the Maryland title stated that the cost to him of the automobile had been $2,700 and that there was no lien on the automobile. Petitioner paid in 1963 a sales tax to the State of Maryland on the basis of a cost of the automobile to him of $2,700. Petitioner gave a note to 873 Hopkins for $2,700. The note had no maturity date. Petitioner never made any payment to Hopkins on the note of either principal or interest and Hopkins never demanded any payment from petitioner. Sometime in 1966 or 1967 Hopkins died. No demand for payment of the note which petitioner gave to Hopkins has been made by any representative of Hopkins' estate, and petitioner has paid no amount to Hopkins' estate with respect to the note. Shortly after acquiring the Ford station wagon in February 1963, petitioner became employed by the Agency for International Development in Washington, D.C., and in March 1963 he was transferred to Rio de Janeiro, Brazil. Petitioner was permitted to take the Ford station wagon with him to Brazil *126 and the United States Government paid the transportation expenses of the station wagon in the amount of $691.65. The automobile arrived in Rio de Janeiro on July 8, 1963, and was brought into Brazil duty-free under an international agreement between the United States and Brazil. Under the terms of this international agreement and certain government regulations, if a United States Government official brought a motor vehicle into Brazil and retained it for his own use for more than one year, such vehicle might be sold dutyfree if permission to make the sale was obtained from the United States Embassy. On July 29, 1964, petitioner submitted a formal written request for permission to sell the Ford station wagon in Brazil dutyfree. This request was denied. In September 1964 petitioner sold the Ford station wagon in Brazil for $4,400. He was required to, and did, reimburse the United States Government for transportation expenses of the automobile in the amount of $691.65. At the time of the sale of the automobile petitioner was required to, and did, pay a tax of $303 to Brazil in connection with the sale. In 1964 petitioner left Brazil and also left the employ of the Agency for International *127 Development. Sometime in 1965 petitioner returned to Brazil in connection with a business venture of his own. When he arrived in Brazil certain authorities of that country questioned whether the sale which he had made in 1964 of the Ford station wagon was legal. Petitioner obtained services of a lawyer, and paid and incurred expenses for legal services. The total amount of the expenses which he incurred and paid in connection with the questions raised by the Government of Brazil was approximately $1,600. Petitioner reported no gain from the sale of the Ford station wagon on his Federal income tax return for the calendar year 1964. Respondent in his notice of deficiency determined that petitioner had a gain of $4,400 from the sale of the Ford station wagon in 1964. Respondent at the trial conceded that petitioner had a basis in the station wagon of the $691.65 transportation costs for which he reimbursed the United States Government and that any gain petitioner had on the sale of the automobile was capital gain. Respondent also conceded that any amount paid by petitioner to Brazil in 1964 as taxes in connection with the sale should properly be a reduction in the sales price of *128 the automobile for the purpose of computing petitioner's gain on the sale. Opinion The issue here is purely factual. Both parties recognize that petitioner realized a capital gain on the sale of the 1962 Ford station wagon to the extent, if any, that the $4,400 which he received from the sale exceeded his basis in the vehicle and his costs of the sale. Petitioner contends that he had a cost basis in the Ford station wagon of $2,700 and that the amount which he was required to pay in 1965 when the legality of the sale was questioned upon his return to Brazil should be considered either as a part of his basis in the 1962 Ford station wagon or as a reduction in the price received in 1964 for the station wagon. It is petitioner's position that he actually sustained a loss on the sale of the station wagon since the $3,405.35 of the sales price of this vehicle remaining after reducing the $4,400 actually received by the transportation cost of $691.65 and the tax paid to the Government of Brazil of $303 is less than the $2,700 cost of the vehicle to petitioner plus the $1,600 paid by petitioner in 1965 when Brazil questioned the legality of his sale of the station wagon. The record *129 does not disclose the nature of the issues raised by the Government of Brazil in 1965. Petitioner testified only that questions were raised with respect to the sale and that as a result of such questions he paid $1,600 for legal services and other costs. There is not sufficient evidence in the record to determine whether 874 this payment by petitioner could be considered as in effect an adjustment to the price petitioner received for the car or whether the expenditure is deductible in computing taxable income. However, petitioner did not incur the expense or make any payment in connection therewith until 1965 and for that reason the $1,600 payment is not properly deductible in 1964 and is not a proper adjustment to the sales price of the automobile in 1964. The question with respect to the $2,700 claimed cost to petitioner of the Ford station wagon is a factual one. Petitioner does not contend that the station wagon was a gift. His position is that the note he gave to Hopkins constituted a payment of $2,700 for the station wagon. The record does not disclose why petitioner made no cash payment when the title to the station wagon was transferred to him, why Hopkins had no lien *130 on the station wagon to secure payment of the note, and why no payment on the note was made either to Hopkins during his lifetime or to his estate after his death. The reasonable inference from the record is that some understanding existed between petitioner and Hopkins at the time petitioner gave Hopkins the note that payment of the note by petitioner was not expected. On the basis of this record, and particularly considering that the burden of proof of the basis to him of the automobile is upon petitioner, we conclude that petitioner realized a capital gain on the sale of the 1962 Ford station wagon in the year 1964 of $3,405.35. Decision will be entered under Rule 50.